UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAYMOND E. DANIEL,

                         Plaintiff,

    -against-

MICHAEL J. ASTRUE
Commissioner of Social Security,

                        Defendant.

**MEMORANDUM & ORDER**

**10-CV-5397 (NGG)**

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ AUG 14 2012 ★
BROOKLYN OFFICE

------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Raymond Daniel brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of the Social Security Administration's ("SSA") decision that he is not disabled and therefore not entitled to Disability Insurance Benefits ("DIB"). Daniel argues that the SSA made four errors in denying his application for benefits: that it (1) incorrectly concluded that Daniel did not satisfy the medical listing requirements for anxiety related disorders; (2) failed to properly weigh the opinions of Daniel's treating physicians; (3) erred in finding Daniel could perform his past work; and (4) failed to properly evaluate Daniel's credibility. Daniel filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking a finding that he is disabled and remand only for the calculation of benefits. The Commissioner of Social Security opposes Daniel's motion, but argues that the SSA made two different errors: that it (1) failed to determine whether Daniel performed substantial gainful activity in part of the relevant time period; and (2) failed to evaluate whether Daniel's depression constituted a severe impairment. The Commissioner filed a motion for reversal and remand pursuant to 42 U.S.C. § 405(g). For the reasons set forth

1

below, Daniel's motion is DENIED, the Commissioner's motion is GRANTED, and this case is REMANDED to the SSA for proceedings consistent with this opinion.

I. BACKGROUND

Daniel was born on November 13, 1964. (Supplemental Administrative Record (Docket Entry # 19) ("Supp. Rec.") at 560.) He has previously worked as an inventory clerk. (Administrative Record (Docket Entry # 18) ("Rec.") at 551.)

On August 4, 2004, Daniel filed an application for DIB, claiming he has been disabled since July 2, 2004, due to an emotional problem. (Id. at 20, 56.) On August 10, Daniel submitted a disability report in which he listed the illness that limited his ability to work as "[a]nxiety/panic, nervous condition." (Id. at 139.) The SSA denied his application on October 4, 2004. (Id. at 53-56.) Daniel requested a hearing on his application before an Administrative Law Judge ("ALJ"); ALJ Manuel Cofresi held a hearing on the application on April 18, 2006, at which Daniel testified. (Supp. Rec. at 556-79.) An additional supplemental hearing occurred on May 30, 2006, at which medical expert Gene Jetell testified. (Id. at 580-95.) On October 13, 2006, the ALJ issued a written decision concluding that Daniel was not disabled within the meaning of the Social Security Act. (Rec. at 44-52.)

Daniel requested that the SSA Appeals Council review the ALJ's unfavorable decision (id. at 89), and, by order dated July 24, 2008, the claim was remanded for a new hearing and decision (id. at 123-28). An additional hearing was held before the ALJ on April 27, 2009, at which Daniel, medical expert Leslie Fine, and vocational expert Amy Leopold testified. (Id. at 511-554.) On May 29, 2009, the ALJ issued a written decision denying Daniel's claim. (Id. at 17-29.) The Appeals Council denied Daniel's request for review on October 21, 2010 (id. at

2

6-9), rendering the ALJ's decision the final decision of the Commissioner. See 42 U.S.C. § 405(g).

On November 22, 2010, Daniel filed the instant Complaint seeking judicial review of the SSA's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Compl. (Docket Entry # 1).) The Commissioner moved for remand for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). (See Def. Mem. (Docket Entry # 15).) Daniel moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), requesting that the court find him disabled due to an anxiety related disorder and remand only for the calculation of benefits. (See Pl. Mem. (Docket Entry # 17).)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

### B. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate to support them, the ALJ's decision is binding on this court.

The fourth sentence of 42 U.S.C. § 405(g) provides: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Remand for further proceedings is appropriate "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard . . .." Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999).

### C. Determination of Disability

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the [Social Security] Act." Shaw, 221 F.3d at 131; see also 42 U.S.C. § 423. A claimant is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

The SSA has promulgated a five-step procedure for determining whether a claimant is "disabled" under the Act. See 20 C.F.R. § 404.1520(a)(4). In Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), the Second Circuit described this five-step analysis as follows:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

Id. at 1022 (citations omitted).

The ultimate "burden is on the claimant to prove that he is disabled." Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000) (alterations omitted). But if the claimant shows at step four that his impairment renders him unable to perform his past work, there is a limited shift in the burden of proof at step five that requires the Commissioner "to show there is other gainful work in the national economy that the claimant could perform." Id.

In making the determinations required by the Social Security Act and the regulations promulgated thereunder, "the Commissioner must consider (1) the objective medical facts;

5

(2) the medical opinions of the examining or treating physicians; (3) the subjective evidence of the claimant's symptoms submitted by the claimant, his family, and others; and (4) the claimant's educational background, age, and work experience." Pogozelski, 2004 WL 1146059, at *10 (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). Moreover, "the ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Id.

## III. DISCUSSION

Both Daniel and the Commissioner argue that the ALJ erred in concluding that Daniel was not disabled under the Social Security Act. Between the two of them, the ALJ's findings at steps one, two, three and four of the five-step procedure are disputed. The court concludes that the ALJ's treatment of steps one and two are inadequate, and that he made an error of law at steps three and four. Remand is necessary to remedy these errors.

At step one, the ALJ found that because Daniel "is unable to carry his burden of explaining earnings for 2007 . . . there is a question as to whether he engaged in substantial gainful activity in 2007." (Rec. at 22.) The Commissioner argues that these statements do not satisfy step one's requirement that the ALJ make a finding on the record. (Def. Mem. at 19.)

At step two, the ALJ found that Daniel had the severe impairment of generalized anxiety disorder. (Rec. at 23.) The Commissioner contends that the ALJ should have also considered whether Daniel's depression constituted a separate severe impairment. (Def. Mem. at 20.)

At step three, the ALJ found that Daniel's impairments, "considered singly and in combination, do not meet or medically equal the criteria of listing 12.06 [anxiety related disorders] or any other listed impairment." (Rec. at 23.) At step four, the ALJ found that Daniel

6

had "the residual functional capacity to perform a full range of work at all exertional levels that does not involve a great deal of stress as his overall ability to function is moderately limited." (Id. at 24.) Based on that residual functional capacity ("RFC"), the ALJ found at step four that Daniel was "capable of performing past relevant work as an inventory clerk," and so was not disabled within the meaning of the Social Security Act. (Id. at 28-29.) Daniel argues that the ALJ erred in making these findings by failing to accord proper weight to the opinions of Daniel's treating physicians (Pl. Mem. at 18-23) and by failing to properly evaluate Daniel's credibility (id. at 23-24).[1] Consequently, Daniel argues that the ALJ's findings that Daniel did not meet the requirements of listing impairment 12.06 (id. at 14-17) and could perform his past work were erroneous (id. at 25-27). The Commissioner for his part argues that, because the ALJ failed to consider the severity of Daniel's depression at step two, he may also have erred by failing to consider the combined effects of Daniel's anxiety and depression at step three. (Id. at 20.)

### A. Substantial Gainful Activity Determination

The Commissioner argues that the ALJ failed to make a finding at step one of whether Daniel performed substantial gainful activity in 2007. (Def. Mem. at 19.) This threshold determination is necessary because a claimant cannot be found disabled for any time period in which he engaged in substantial gainful activity. See 20 C.F.R. § 404.1520(b). The court agrees that the ALJ's analysis was inadequate.

The ALJ wrote, "[t]he claimant is unable to carry his burden of explaining earnings for 2007, and therefore there is a question as to whether he engaged in substantial gainful activity in 2007." (Rec. at 22.) The ALJ cites tax documents from 2007 that appear to show $7,850 in self-employment earnings. (Id.) Daniel contends that this money derived from sale of property

---

[1] The Commissioner disputes this, arguing that the ALJ afforded the proper weight to the opinions of Daniel's treating physicians and that substantial evidence supports the ALJ's findings with respect to these steps. (Def. Mem. at 20, 22.)

7

in Florida and not employment, but the ALJ expressed skepticism based on apparent errors in the tax returns. (Id. at 22-23.)

Rather than finding that Daniel had engaged in substantial gainful activity in 2007, the ALJ concluded that there was a *question* as to the issue. Although he then proceeded to step two, implying that Daniel was *not* engaged in substantial gainful activity, step one requires a finding on the record. Additionally, the court notes that the ALJ's findings at this step are somewhat contradictory. While in one place the ALJ expressed skepticism that reported income derived from a real estate transaction, he later cited Daniel's ability to purchase real estate as evidence that Daniel was not disabled. (Rec. at 28.)

On remand, the ALJ must find definitively whether Daniel did or did not engage in substantial gainful activity during the entire period for which he seeks retroactive benefits.

To find that Daniel did engage in substantial gainful activity, the ALJ will need to make findings beyond those already contained in his opinion. Substantial gainful activity is defined as work that "[i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510. The regulations set forth three alternate tests for determining if an individual has engaged in self-employed substantial gainful activity: (1) "[Y]ou render services that are significant to the operation of a business and receive substantial income from that business; (2) "[Y]our work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood"; or (3) "[Y]our work activity, although not comparable to that of unimpaired individuals," is worth an amount comparable to an employee in terms of its value to the business. 20 C.F.R. §§ 404.1575(a)(2)(i)-(iii). Under SSA guidelines, an individual is

ordinarily considered to be engaging in substantial gainful activity if, in 2007, he made at least $900 per month ($10,800 per year). Substantial Gainful Activity, Social Security Online, http://www.ssa.gov/oact/cola/sga.html.

The only evidence on the record of substantial gainful activity after 2004 is the 2007 tax return; there is no evidence of any specific work activities. There is no evidence that Daniel met any of the SSA's tests for substantial gainful activity, and the ALJ does not suggest as much. Furthermore, additional evidence on the record suggests Daniel was not engaged in substantial gainful activity. Counsel for Daniel submitted a letter clarifying the erroneous items on the tax return, (Rec. at 477-78) and the $7,850 in question, even if earned through self-employment, falls well short of the general standard for "substantial income." Even though this is not a bright-line threshold, the low amount behooved the ALJ to further develop the record and at least attempt to ascertain whether the work performed (if any) satisfied test two or test three for substantial gainful activity. See 20 C.F.R. §§ 404.1575 (a)(2)(ii)-(iii); Parker v. Astrue, No. 06-CV-1458 (GLS) (VEB), 2009 WL 3334341 at *12 (N.D.N.Y. Oct. 14, 2009).

Daniel bears the burden of proving he is disabled, Curry, 209 F.3d at 122, but if the record is inadequate for the ALJ to make a proper determination of substantial gainful activity, the ALJ has an affirmative duty to investigate facts and develop the record.

On remand, the ALJ should weigh the evidence on the record to make a finding as to whether Daniel engaged in substantial gainful activity as defined by the regulations. If the ALJ is unable to make such a determination based on the existing evidence, then further development of the record is necessary.

## B. Evaluation of Daniel's Treating Physicians

Daniel argues that the ALJ erred at steps three and four by failing to afford proper weight to the opinions of treating physicians Paul Corley, M.D. and Gerson Gomes, M.D. (Pl. Mem. at 17-21, 23-25.) He is correct.

### 1. Evaluation of Anxiety Related Disorder

At step three, the ALJ must determine whether the claimant's severe impairments meet or equal a listing impairment of the social security regulations. Here, the ALJ considered listing 12.06 for anxiety related disorder, a mental impairment. To determine whether a claimant meets the requirements for a mental impairment, the ALJ must apply a "special technique" in which he "rate[s] the degree of functional limitation resulting from the impairment(s)." 20 C.F.R § 404.1520a(b). The ALJ must rate the degree of functional limitation for each of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Ratings of the first three functional areas are made on a five-point scale—none, mild, moderate, marked, and extreme—and ratings of the fourth functional area are made on a four-point scale—none, one or two, three, and four or more. 20 C.F.R. § 404.1520a(c)(4). These ratings are based on "the significant [medical] history, including examination and laboratory findings . . . ." 20 C.F.R. § 404.1520a(e)(4).

Paragraph B of each of the listings of impairments sets forth the minimum necessary findings for that particular impairment in each of the four § 404.1520a(c)(3) functional areas. See 20 C.F.R. § 404, Subpt. P, App. 1 at Sec. 12.06B (1987). Listing 12.06 requires at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration," id.,

where "marked" is defined as "more than moderate but less than extreme," id. at 12.00C, and "extended duration" is defined as "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks," id.

### 2. Findings of Daniel's Treating Physicians

Dr. Corley, a psychiatrist, began treating Daniel in December 2003, and saw Daniel regularly until at least May 2009, when the ALJ released his opinion. (See Rec. at 346-51, 379-88, 433-37, 445-46, 490, 499-504.) On December 12, 2003, Dr. Corley diagnosed panic disorder without agoraphobia. (Rec. at 346.) On September 14, 2004, he completed a functional capacity form, again diagnosing panic disorder without agoraphobia. (Id. at 220.) Dr. Corley opined that Daniel was able to perform daily hygiene and household needs, but was excessively vulnerable to stressors at work, developed anxiety and panic when under pressure, and was limited in sustained concentration and persistence with workplace stress. (Id. at 223-25.)

On March 17, 2005, Dr. Corley completed a Psychiatric/Psychological Impairment Questionnaire, again diagnosing panic disorder without agoraphobia. (Id. at 247.) Dr. Corley gave a Global Assessment of Functioning ("GAF") score of 45.[2] (Id.) Dr. Corley again found that Daniel experienced anxiety and panic attacks when under increased work stress, and had marked limitations in areas such as ability to work at a consistent pace and ability to carry out detailed instructions at work. (Id. at 250-54.) Dr. Corley estimated that, as a result of the impairments, Daniel would be absent from work two to three times per month. (Id. at 254.)

---

[2] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" Kohler v. Astrue, 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed. 2000)). GAF scores in the 41-50 range signify "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

On March 28, 2006, Dr. Corley completed a second Psychiatric/Psychological Impairment Questionnaire. (Id. at 310.) He gave Daniel a GAF score of 55.[3] (Id. at 310.) Dr. Corley recommended that Daniel not return to work due to the severity of his anxiety and inability to perform tasks related to a normal work environment. (Id. at 309.) He predicted that Daniel's condition would last for at least one to two years. (Id.)

On December 11, 2006, Dr. Corley completed a third Psychiatric/Psychological Impairment Questionnaire, with findings that were essentially unchanged. (Id. at 356-62.) On October 30, 2008, he diagnosed generalized anxiety disorder and major depression with atypical features. (Id. at 421-28.) On December 22, 2008, he again diagnosed anxiety disorder and depression, and found that Daniel's total impairment and inability to perform tasks related to a normal work environment would likely last indefinitely. (Id. at 454-56.)

Concurrently, Daniel was treated by Dr. Gerson Gomes, an internist. On April 1, 2005, Dr. Gomes completed a Multiple Impairment Questionnaire. (Id. at 262-69.) Dr. Gomes diagnosed anxiety/panic and possible chronic psychosis, and opined that Daniel's symptoms interfered with his ability to function in a work setting. (Id.) On January 4, 2006, he reported that Daniel was "unable to function in a normal setting, unable to carry out the activities of daily living due to progressive and chronic mental disorder." (Id. at 271.) He further opined that Daniel was totally disabled due to general anxiety disorder. (Id. at 273.) In a report dated January 30, 2008, Dr. Gomes made similar diagnoses, and again found that Daniel was totally disabled. (Id. at 394-95.)

---

[3] GAF scores in the 51-60 range signify "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 32.

### 3. Findings of the ALJ

The ALJ found that Daniel did not satisfy the Paragraph B requirements for listing 12.06 (anxiety related disorders) based on findings of only moderate restrictions on activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence or pace, and no episodes of decompensation of extended duration. (Id. at 23-24.) In support of these findings, the ALJ cited Daniel's ability to care for his personal needs, watch television, read, drive, and engage in business activities involving the purchase and sales of property. (Id. at 23.) Moving on to step four, the ALJ found that Daniel had the RFC to perform any work that did not involve a great deal of stress, and so was able to perform his past work as an inventory clerk. (Id. at 28-29.)

In making both findings, the ALJ gave no weight to the opinions of Dr. Corley and Dr. Gomes because the ALJ found their opinions to be self-contradictory and outweighed by other evidence, including determinations by medical expert Leslie Fine, M.D. and vocational expert Amy Leopold. (Id. at 28.)

Specifically, the ALJ's reasons for affording no weight to the treating physicians' opinions were: (1) Dr. Corley's own reports belied his ultimate conclusions because the reports described Daniel as "calm and well-related" and rated Daniel with a GAF score is 55, which indicated only moderate dysfunction and moderate symptoms; (2) The treating physicians' reports were inconsistent with the record because testimony from Daniel and a reviewing physician indicated that Daniel was capable of activities including "walking, watching television and reading one to two hours a day, dropping off and picking up his children from school, caring for his personal needs, driving, and friends and family, and engaging in business activity with the purchase and sale of land in Florida"; (3) Dr. Gomes' opinions were given no weight because he

13

"is not a psychiatrist and he did not provide mental status findings to support his conclusions and opinions"; and (4) the treating physicians' opinions were contradicted by those of Dr. Fine. (Id.)

### 4. Treating Physician Rule

A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted). Under the SSA's regulations, "a treating physician's report is generally given more weight than other reports." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). The SSA's "treating physician rule" requires an ALJ to give a treating physician's opinion "controlling weight" if "the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, "[w]hen other substantial evidence in the record"—such as other medical opinions—"conflicts with the treating physician's opinion, [ ] that opinion will not be deemed controlling." Snell, 177 F.3d at 133. And in any case, "some kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot work—are reserved to the Commissioner" and are therefore never given controlling weight. Id. (internal quotation marks omitted). Rather, the ALJ "considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." Id.

Even when an ALJ does not give controlling weight to a treating physician's opinion, the ALJ cannot give the opinion *no* weight without making certain findings. See 20 C.F.R. § 404.1527(c)(2). Even if contradicted, the treating physician's opinion is generally entitled to

14

more weight than that afforded to the opinions of examining or consulting physicians. Tomasello v. Astrue, No. 09-CV-0585, (MAT), 2011 WL 2516505, at *3 (W.D.N.Y. June 23, 2011) (quoting Schisler v. Sullivan, 3 F.3d 563, 565 (2d Cir. 1993)). If the ALJ does not afford a treating physician's opinion such extra weight, he must provide "good reasons" why not. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In doing so, the ALJ should assess "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(c)(2)-(6). While an ALJ need not mechanically recite each of these factors, the ALJ must "appl[y] the substance of the treating physician rule." Halloran, 362 F.3d at 32.

In order to determine whether the ALJ properly evaluated the opinions of the treating physicians, the court must decide whether those opinions were entitled to controlling weight, and if not whether the ALJ provided good reasons for discounting them based on the factors set forth in the regulations. See 20 C.F.R. § 404.1527(c)(2).

### 5. Analysis

#### a. Controlling Weight

Neither treating physicians' opinion was entitled to controlling weight because they were inconsistent with other evidence in the record. See id.; Snell, 177 F.3d at 133. As the ALJ noted, Dr. Fine found that Daniel did not meet the disability requirements at step three and Ms. Leopold found that Daniel was capable of performing his past work, unlike the findings of Dr. Corley and Dr. Gomes. (Rec at 26, 29.)

Dr. Fine testified at the April 27, 2009, hearing before the ALJ. (Id. at 537-39, 541-50.) Based on his review of the medical records, Dr. Fine concluded that Daniel had an anxiety

15

disorder that did not meet Listing 12.06 Paragraph B criteria, contradicting the conclusions of the treating physicians. (Id. at 539.) Fine testified that Daniel's limitations in functioning were less than marked because Daniel had been able to complete a real estate transaction, had appeared calm and well related according to several of Dr. Corley's reports, and had a GAF score of 55. (Id. at 543, 547, 549.)

Leopold, the vocational expert, testified at this same hearing. (Id. at 551-53.) She stated that Daniel's past job as an inventory clerk required the ability to focus on repetitive tasks and follow simple instructions. (Id. at 552.) She testified that while an individual with moderate impairments would be able to do this type of work, an individual with marked impairments would not. (Id. at 553.) Thus, to the extent that Daniel's limitations were only moderate, her findings were inconsistent with the opinions of the treating physicians that Daniel was unable to return to his past work.

Because Dr. Corley's and Dr. Gomes' opinions are inconsistent with those of Dr. Fine and Ms. Leopold, they are not entitled to controlling weight.[4]

### b. Good Reasons

Thus, the question for the court is whether the ALJ provided "good reasons" for giving no weight to the opinions of Dr. Corley and Dr. Gomes based on the factors set forth in the regulations. The ALJ has not.

Although the treating physicians' opinions were not entitled to controlling weight, the ALJ failed to justify his decision to assign them no weight. Both Dr. Corley and Dr. Gomes examined Daniels regularly over a period of several years. Both completed several extensive reports and detailed the symptoms that led to their conclusions. As the only two treating

---

[4] As noted above, the specific opinions of the treating physicians that Daniel was disabled cannot be given controlling weight—even if they were fully consistent with the record—as this is a determination reserved for the ALJ.

16

physicians, their findings are consistent with each other, as well as with the findings of examining physician Michael Bernstein, M.D.[5]

While Dr. Corley did frequently find Daniel "calm and well-related" during evaluations, this does not contradict Dr. Corley's opinions because, as Dr. Corley wrote in a letter to the ALJ, this assessment referred only to Daniel's "ability to maintain eye contact and appropriate body language during the sessions, and in no way should be interpreted as an indication of his level of anxiety when under stress." (Rec. at 354.) Dr. Corley's GAF score of 55, while relevant, does not contradict his ultimate finding that Daniel was disabled and unable to work because a GAF score "does not have a direct correlation to the severity requirements in [the SSA's] disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injuries, 65 Fed. Reg. 50746, 50764-5 (2000).

Similarly, Dr. Gomes' lack of specialization was only one factor for the ALJ to consider, and should not have foreclosed any consideration of his opinions. See Sutherland, 322 F. Supp. 2d, at 291 (ALJ erred in dismissing a treating physicians opinion simply for lack of specialization). Finally, the treating physician opinions should have been given at least equal—and likely more—weight compared to those of Dr. Fine, a non-examining physician. See Vargas v. Sullivan, 898 F.2d 293, 295 (2d Cir. 1990) (noting that a medical advisor's evaluations of another doctor's findings is entitled to little weight); Crespo v. Apfel, No. 97-CV-4777 (MGC), 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (noting that a "consulting physician's

---

[5] Dr. Bernstein, a psychiatrist, examined Daniel on January 5, 2006, and October 30, 2008. After the first examination, Dr. Bernstein diagnosed severe generalized anxiety disorder based on findings of marked limitations in numerous areas and a GAF score of 50. (Rec. at 276, 278, 281.) He opined that Daniel was unable to work for at least the next twelve months. (Id. at 276.) After the second examination, Dr. Bernstein diagnosed generalized anxiety disorder with panic attacks and major depressive disorder, and again found that Daniel would be unable to work for the next twelve months. (Id. at 407.) While the ALJ describes these examinations, it is unclear what, if any, weight was afforded to them. This too was an error because the ALJ must evaluate every medical opinion it receives. See 20 C.F.R. § 404.1527(c); Sutherland, 322 F. Supp. 2d at 290 ("[T]he ALJ's failure to mention several parts of the record which contradict his conclusion constitutes error.").

opinions or report should be given limited weight"). Dr. Fine's opinions are particularly suspect given that they are premised in large parts on Dr. Corley's descriptions that Daniel was "calm and well-related" (Rec. at 547) and had a GAF score of 55 (id. at 544)—evidence which, as described above, is of limited probative value.

The ALJ's failure to provide good reasons for affording no weight to the opinion of Daniel's treating physicians constituted legal error. Accordingly, remand is necessary for the ALJ to determine what weight to accord these opinions based on the relevant factors. See Tomassello, 2011 WL 2516505, at *6 ("[B]ecause this court finds that the ALJ failed to properly apply the treating physician rule, this court remands this case to the Commissioner for further administrative proceedings."). Should a proper evaluation yield different results in either whether Daniel's impairments meet the listing requirements for 12.06 or his residual functional capacity, the ALJ must further reconsider Daniel's ability to perform past work and, if necessary, proceed to step five of the five-step analysis.

C. **Evaluation of Daniel's Depression**

The Commissioner argues that the ALJ erred in failing to evaluate whether Daniel's depression constituted a severe impairment at steps two and three. (Def. Mem. at 20.) The court agrees.

Dr. Corley, Dr. Gomes, and Dr. Bernstein diagnosed Daniel with forms of depression at various times. (See Rec. at 421, 219, 407.) While the ALJ found Daniel's generalized anxiety disorder to be severe at step two, his report failed to include any analysis as to the severity of Daniel's depression. (Id. at 23.) Because the treating and examining physicians all found that Daniel suffered from depression, on remand the ALJ should explicitly analyze at step two whether Daniel's degree of impairment meets the severity requirements. See 20 C.F.R.

18

§ 404.1520(a)(4)(ii). If the ALJ finds Daniel's depression was severe, then the ALJ should consider whether this impairment meets the requirements of any of the medical listing impairments at step three. See 20 C.F.R. § 404.1520(a)(4)(iii).

### D. Evaluation of Daniel's Credibility

Finally, Daniel argues that the ALJ failed to properly evaluate Daniel's subjective accounts of his pain and symptoms. (Pl. Mem. at 23-24.) The ALJ's determination that Daniel's allegations were inconsistent with the medical evidence (Rec. at 27) was tainted by the ALJ's failure to properly evaluate the opinions of Daniel's treating physicians—a failure that would naturally have affected how the ALJ viewed the totality of the medical evidence. On remand, the ALJ is directed to consider Daniel's subjective complaints in light of the ALJ's fresh evaluation of Dr. Corley's and Dr. Gomes' opinions. See Sutherland, 322 F. Supp. 2d at 291 (because the ALJ's failure to properly apply the treating physician rule "affect[ed] consideration of the ALJ's treatment of the plaintiff's subjective complaints," the court would "not now consider" plaintiff's argument that the ALJ did not properly consider her complaints).

## IV. CONCLUSION

Because there are multiple issues to be addressed, the court does not find that there is unequivocal evidence of disability or that further findings would be unhelpful to assure proper disposition of Daniel's claim. See Pogozelski, 2004 WL 1146059, at *20. Accordingly, the Commissioner's motion for remand is GRANTED, Daniel's motion for judgment on the pleadings is DENIED, and this case is REMANDED to the Commissioner for resolution of the following issues: (1) Determination of whether Daniel engaged in substantial gainful activity in 2007; (2) Correct application of the treating physician rule to accord the proper non-controlling weight to the opinions of Dr. Corley and Dr. Gomes; (3) Determination of the severity of Daniel's depression; and (4) Reevaluation of Daniel's subjective complaints in light of all the medical evidence.

SO ORDERED.

Dated: Brooklyn, New York
August 13, 2012

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge